**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| SAVANAH HERNANDEZ,<br>*Plaintiff*,<br>v.<br><br>CHRISTOPHER OSTROUSHKO;<br>DEYANNA OSTROUSHKO; AND<br>PAIGE OSTROUSHKO,<br>*Defendants*. | Case No. 0:26-cv-02517<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY** |

Plaintiff Savanah Hernandez, by and through her attorneys, Mohrman, Kaardal & Erickson, P.A, and Sweigart Murdock, LLP, hereby files her Memorandum of Law in Opposition to Defendants' Motion to Stay [Dkt. 22].

## I. INTRODUCTION

On April 11, 2026, Defendants Christopher Ostroushko ("Chris"), DeYanna Ostroushko ("DeYanna"), and Paige Ostroushko ("Paige") attacked Plaintiff Savanah Hernandez ("Hernandez") while Hernandez was covering an anti-ICE protest at the Whipple Federal Building in her capacity as a reporter for Turning Point USA. After the incident, a federal grand jury indicted all three defendants, and Hernandez sued them for battery and assault. Defendants have asked the Court to stay Hernandez's civil action pending final resolution of the criminal case.

The Constitution does not require a stay of a civil case simply because of parallel criminal proceedings. Instead, a defendant's Fifth Amendment right to remain silent in criminal cases and privilege against self-incrimination in civil cases *may* counsel in favor of a stay depending on the circumstances. While Defendants apply the correct standard in their Motion, they omit crucial facts that make this case markedly different from most cases in which a criminal defendant also faces a civil lawsuit for their misconduct.

According to Defendants, they need a stay so they won't be forced to choose between invoking the Fifth Amendment in this case (giving rise to an adverse inference of liability) and testifying (which could be used against them in the criminal case). But Defendants have already testified about the altercation at the center of both cases—under oath and of their own volition. All three defendants filed Petitions for Harassment

Restraining Orders in state court that included sworn testimony about their version of events. While Paige ultimately dismissed her Petition, Chris and DeYanna testified about their version of events at a consolidated evidentiary hearing on their Petitions where they were represented by two attorneys. (Both Petitions were dismissed.)

While Defendants of course cannot be compelled to testify in their criminal case, they have waived their privilege against self-incrimination in this case. Defendants cannot simultaneously provide sworn statements, and, in Chris and DeYanna's case, sworn oral testimony, in a case in which they are the petitioners, while refusing to testify in a case about the same event in which they are civil defendants. Given this waiver, Defendants may not invoke the Fifth Amendment in this case, so this case should proceed.

If the Court concludes that Defendants are entitled to a stay despite their previous voluntary testimony, the stay should be partial and narrowly tailored. The Fifth Amendment only reaches testimony, not participation in litigation more generally, so Hernandez should still be permitted to depose third parties and obtain their documents via subpoena while the partial stay is in place.

## II. BACKGROUND

### A. Defendants Attack Hernandez at a Protest on April 11, 2026.

Hernandez's claims for battery and assault against all three Defendants arise out of an altercation at the Whipple Federal Building on April 11, 2026 (the "Incident"). Hernandez, a journalist affiliated with TPUSA, attended an anti-ICE protest that Chris, his wife DeYanna, and their adult daughter Paige attended. Dkt. 1 ¶¶ 23–24. Defendants assaulted and battered Hernandez by "blowing loud whistles in her ear, slapping her face

with sex toys, breaking her glasses, shoving her, body slamming her, tackling her, punching her, while at times encircling her so close as to prevent her escape. *Id.* ¶ 3.

### B. The Department of Justice Opens a Criminal Investigation.

The day after the Incident, Assistant Attorney General for Civil Rights Harmeet K. Dhillon confirmed[1] a journalist's reporting that the "FBI has opened a criminal investigation into the assault on Savanah Hernandez":




[1] Harmeet K. Dhillon (@AAGDhillon), X (Apr. 12, 2026, 11:22 a.m.), https://x.com/AAGDhillon/status/2043394433517838520. Hernandez requests that the Court take judicial notice of the existence of Ms. Dhillon's X post under Federal Rule of Evidence 201(b)(2).

**C. DeYanna and Paige File Harassment Restraining Order Petitions.**

After Ms. Dhillon publicly confirmed the ongoing FBI investigation, DeYanna and Paige filed Petitions for Harassment Restraining Orders in the Hennepin and Scott County District Courts, respectively. Franklin-Murdock Decl. ¶¶ 3–4, Ex. 1–2.

In her Petition, dated April 17, 2026, DeYanna described the Incident as follows under penalty of perjury: "Savannah [sic] grabbed my neck and physically assaulted me while I was trying to protect my daughter, whom she had already punched twice and assaulted." Franklin-Murdock Decl. ¶ 3, Ex. 1 at 4, 11.

Paige stated the following in her Petition, dated April 18, 2026, also under penalty of perjury: "Savannah [sic] back handed my face with full arm extension and then laughed at me. After she then back handed me again. Then she punched me full contact in the face." Franklin-Murdock Decl. ¶ 4, Ex. 2 at 4, 11.

**D. A Federal Grand Jury Returns an Indictment Against Defendants.**

On April 28, 2026, a federal grand jury in this District indicted all three Defendants for their role in the Incident. *See* Dkt. 23 at 2. Chris and Paige were indicted for Interference with Federally Protected Activity, and all three Defendants were indicted for Assault. *Id.*

**E. Hernandez Files This Lawsuit.**

On May 6, 2026, Hernandez sued all three Defendants for battery and assault in connection with the Incident. Dkt. 1.

**F. Chris Files a Harassment Restraining Order Petition.**

On May 13, 2026, Chris filed Petition for Harassment Restraining Order in Hennepin County District Court, stating the following under penalty of perjury:

> On April 11, 2026, I met Respondent once in person at a peaceful protest near the Whipple Federal Building. At that time, I did not know Respondent, Savanah personally. Respondent is a wellknown agitator affiliated with Turning Point USA who attends public events to provoke reactions, then posts selectively edited, slanderous, and defamatory content intended to harm a person's reputation and cause emotion and financial injury, including by doxxing.
> While at that public location, Respondent assaulted my wife, DeYanna Ostroushko, and my daughter, Paige Ostroushko. Respondent was escorted from the scene by police.

Franklin-Murdock Decl. ¶ 5, Ex. 3.

### G. Chris and Deyanna Testify in an Evidentiary Hearing on their Harassment Restraining Order Petitions.

On June 25, 2026, the Hennepin County District Court held an evidentiary hearing on Zoom on Chris and DeYanna's harassment restraining order petitions, which had been consolidated into one case. The hearing transcript establishes the following, as relevant to Defendants' Motion:

- Chris and DeYanna were represented by two attorneys at the hearing: James Cook and Trisha Pohland. Franklin-Murdock Decl. ¶ 6, Ex. 4 at 3:5–12.
- Chris and DeYanna were placed under oath and swore or affirmed to tell the truth. *Id.* 7:15–22.
- Chris admitted that when he "walked up to Ms. Hernandez and screamed in her ear from the back; told her to shut the F up, [and] called her a bitch," she had not assaulted him or Paige and he had no knowledge of her assaulting DeYanna. *Id.* at 37:12–38:15.
- Chris admitted that he was not afraid of Hernandez while he was yelling in her ear. *Id.* at 38:18–39:23.

- Chris admitted that on April 11, 2026, he had "told [his] daughter, Paige Ostroushko, to blow a whistle in Ms. Hernandez's, quote, f-ing ear[.]" *Id.* at 44:19–45:17.
- Chris admitted that he "shoved Ms. Hernandez right into the ground from the back," but he claimed it was "provoked, because she actually assaulted my daughter and wife before that." *Id.* at 46:1–13.
- Chris admitted that he understood that he signed his Petition for Harassment Restraining Order under penalty of perjury. *Id.* at 50:18–51:12.
- Chris explained that when an individual wrote to him that he "beat up an f-ing woman," he understood that to refer to Hernandez. *Id.* at 60:7–25.
- Chris explained that when he posted a video on Instagram on April 20, 2026, about the Incident, his statement that he "felt really contrite" referred to the "whole situation," but he refused to say whether he felt contrite about "shoving Ms. Hernandez from the back into the ground." *Id.* at 68:2–24.
- DeYanna admitted that video footage of the Incident depicted her laughing and stating, "I tackled her and then I ran," stating that she was "laughing" "[b]ecause of the adrenaline of after – of the reaction of tackling Savanah Hernandez after she punched my daughter." *Id.* at 106:5–18.
- DeYanna explained that while she was laughing and discussing her role in the Incident, she "was not afraid of Savanah Hernandez in the moment, but I was agitated from the moment that led up to everything that day; from watching her

punch my daughter; from my daughter losing her footing, to pushing her; to her coming after me, grabbing my neck before my husband got involved, where she got up and punched my daughter again, before we went after her because she kept going. So, yes, I was agitated in the situation with lots of adrenaline." *Id.* at 106:19–107:8.

- DeYanna likewise understood that she signed her Petition for Harassment Restraining Order under penalty of perjury. *Id.* at 107–17:25.
- DeYanna provided the following version of events during Attorney Cook's redirect examination: "So, my daughter was walking beside her on the side, and she grabbed my daughter's face and lost her footing, and my daughter -- my daughter had then pushed Savanah into the fence, and I tried to de-escalate the situation by pushing my daughter back, saying: Hey. Hey. Don't do that. And then my daughter said: She punched me. So, I went up to her, and I said: Don't f-ing touch my daughter again. And she grabs my throat and pushed me back before she moves into the -- to the area where she had stated some comments, and my husband intervened, and got back -- and then she got up off her feet immediately, and where Paige was in front, Paige said something to her, and she slapped her, and then punched her in the face before, in that moment, I reacted again in self-defense, protecting my daughter, and tackled her." *Id.* at 120:8–121:6.
- On redirect, DeYanna expanded on why she was laughing in the video footage immediately following the Incident: "It was pure adrenaline. Like, the situation of protecting my daughter; and then kind of running away from the situation; and then talking to someone as my daughter is getting an ice pack on her face because she

had just gotten punched; and kind of -- just talking to other people about the situation." *Id.* at 121:12–122:9.

As the above list makes clear, Chris and DeYanna testified in detail about their version of events on April 11, 2026. Neither of them invoked their Fifth Amendment privilege at any time. *See generally*, *id.*

**H. Defendants' Restraining Order Petitions Are Dismissed.**

On June 29, 2026, the Hennepin County District Court issued Orders for Dismissal as to both Chris and Paige's Petitions for Harassment Restraining Orders. Franklin-Murdock Decl. ¶¶ 7–8, Exs. 5–6.

On July 7, 2026, the Scott County District Court issued an Order for Dismissal of Harassment Restraining Order regarding Paige's Petition at her request. Franklin-Murdock Decl. ¶ 9, Ex. 7.

## III. ARGUMENT

Defendants waived their Fifth Amendment privilege in this action by providing sworn testimony in connection with their civil harassment cases, which fatally undermines their request for a stay. Even if the Court finds a stay is warranted, the stay should be limited and narrowly tailored to address Defendants' Fifth Amendment concerns.

**A. The Court Has Significant Discretion on Whether to Issue a Stay, as a Stay Is Not Constitutionally Mandated.**

"The Constitution 'does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings,'" "[b]ut '[a] stay of a civil trial until factually related criminal proceedings are concluded is sometimes warranted.'" *Ruszczyk as Tr. for Ruszczyk*

*v. Noor*, 349 F. Supp. 3d 754, 759 (D. Minn. 2018) (first quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980), then quoting *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993)). "[A] stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy." *Scott v. Foley*, No. 2:24-CV-04107-MDH, 2025 WL 1046760, at *3 (W.D. Mo. Apr. 8, 2025).

To warrant a stay, "a civil defendant cannot hide behind a blanket invocation of the Fifth Amendment privilege. Therefore, to warrant a stay, defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at trial by selectively invoking his Fifth Amendment privilege, . . . or that the two trials will so overlap that effective defense of both is impossible." *Koester*, 11 F.3d at 823 (internal citation omitted).

"In addition to considering the extent to which a defendant's Fifth Amendment rights are implicated, a Court may consider, where relevant, the following five factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Fidelity Nat. Title Ins. Co. of N.Y. v. Nat'l Title Resource Corp.* ("*Fidelity*"), 980 F. Supp. 1022, 1024 (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324–25 (9th Cir. 1995)) (other citation omitted).

### B. Defendants Voluntarily Testified About the Incident Before Seeking a Stay.

This case is very different from most cases in which a criminal defendant seeks a stay in a civil case as all three Defendants have already voluntarily testified about their version of events—a fact Defendants ignore in their Motion. Paige and DeYanna filed Petitions for Harassment Restraining Orders after a high-ranking Department of Justice official confirmed the existence of an FBI investigation; Chris filed his Petition after he was indicted and sued; and Chris and DeYanna testified at an evidentiary hearing after they were indicted and sued. *See* Section II, *supra*.

The Western District of Missouri's opinion in *Scott v. Foley* is instructive. In *Scott*, the court decided a motion to stay amidst similar facts: "Defendant brings her motion seeking a stay of the proceedings against her pending resolution of the respective criminal charges issued. Plaintiff argues that a stay is inappropriate because Defendant has already waived their Fifth Amendment right against self-incrimination." *Scott*, 2025 WL 1046760, at *2. The plaintiff's waiver argument was based on the defendant (a corrections officer) "voluntarily providing testimony" during an internal investigation into an inmate's death conducted by the Department of Corrections as well as a sheriff's criminal investigation into the matter. *Id.*

The *Scott* court explained that the Fifth Amendment contains both a right not to give compelled testimony as a defendant in a criminal case and a privilege against self-incrimination in any other proceeding. *Id.* (citing *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)). An individual can "waive his Fifth Amendment right against self-incrimination"

by giving a "knowing, intelligent, and voluntary" waiver. *Id.* (citing *Miranda v. Arizona*, 384 U.S 436, 444 (1966)). Given this framework, the *Scott* court concluded that the defendant "waived her Fifth Amendment right against self-incrimination to the extent covered in her voluntary responses to the . . . internal investigation and the . . . Sheriff's Department criminal investigation." *Id.* at *3. The court therefore concluded that the plaintiffs could examine the defendant "on topics voluntarily given by [her] based on her responses" in the two investigations. *Id.*

The defendant's Fifth Amendment waiver was dispositive for her stay motion:

> [T]he Court finding that Defendant Bradshaw having already waived her Fifth Amendment right against self-incrimination as to the topics she has already voluntarily discussed the Court finds that Defendant has not made a strong showing the actions are so interrelated she cannot protect herself in civil discovery and at trial by selectively invoking her Fifth Amendment right. The Court finds this factor [the burden on the defendant] weighs in favor of Plaintiffs.

*Id.* at *4.

To be sure, there is a circuit split as to whether a Fifth Amendment waiver extends beyond a given proceeding. *See InfoTeK Corp. v. Preston*, 760 F. Supp. 3d 347, 357 (D. Md. 2024) (collecting cases). The Eighth Circuit "recognize[d] that there is ample precedent for the rule that waiver of the Fifth Amendment privilege in one proceeding does not waive that privilege in a subsequent proceeding, *often because circumstances have changed between the two proceedings*." *United States v. Allmon*, 594 F.3d 981, 985 (8th Cir. 2010) (citations omitted; emphasis added). Despite this "ample precedent," the Eighth Circuit found no error in the district court's refusal to permit the defendant to decline to testify where he had testified about the same subject matter in another proceeding. *Id.* As

Defendants already testified about the Incident, the fact that their testimony was given in other proceedings should not prevent the Court from finding a waiver here—just as the *Scott* court found a waiver relating to the defendant's testimony in investigatory proceedings.

### C. The *Keating* Factors Counsel Against a Stay.

The facts of this case, particularly Defendants' past testimony, cause the *Keating* factors to tip in Hernandez's favor.

**Hernandez's Interest in Proceeding.** Hernandez has an obvious interest in proceeding with the case. A stay would delay and potentially impair Hernandez's ability to obtain justice in this case as "'[w]itnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time.'" *Fidelity*, 980 F. Supp. at 1024 (quoting *Sw. Marin, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989)). As explained in Section III.D, *infra*, Hernandez faces an acute risk of losing key evidence in this case given the outsized importance of eyewitness testimony and documentary evidence from third parties in this case.

**Burden on Defendants.** *Scott* establishes that a stay would not pose a legally significant burden on Defendants as they have already provided voluntary testimony about the Incident. *See Scott*, 2025 WL 1046760, at *4; Section III.B, *supra*.

**Convenience of the Court.** Despite Defendants' effort to portray this case as a complex matter that will bog the court down in motions practice, Dkt. 23 at 7–8, this is in fact a relatively simple case involving a single plaintiff advancing straightforward tort claims based on a short encounter that was captured on video. Defendants argue there will

be "significant motion practice regarding Defendants' invocation of their Fifth Amendment rights." *Id.* at 8. But that issue is before the Court now as the Court must decide the legal consequence of Defendants' voluntary testimony in the restraining order cases. After the Court decides this issue, motions practice will be minimal provided Defendants comply with their discovery obligations. The main issues in the case are whether Defendants' physical attacks on Hernandez, which were captured on video, were excused (Hernandez will prove they were not) and the value of Hernandez's damages, which are both fact questions for the jury.

**Interest of Non-Parties.** Defendants assert there are no third-party interests in either direction. *Id.* at 8. Hernandez has sent preservation letters to ten non-parties who are believed to have discoverable evidence related to the Incident. Franklin-Murdock Decl. ¶ 10. A lengthy stay burdens these non-parties by requiring them to make efforts to preserve evidence while the stay is in place.

**Interest of the Public.** In *Scott*, the court concluded that the public interest factor was neutral as there was an interest both "in the prompt resolution of this civil matter" and in "ensuring that the integrity of the criminal process is not subverted." *Scott*, 2025 WL 1046760, at *4. The same public interest in prompt resolution exists here. There is no trial date in the criminal case yet, and Defendants filed a joint motion in the criminal case, in which DeYanna is represented by the same attorney as in this case, requesting an extension to file pretrial motions based on "the complexity of the legal issues," among other reasons. *United States v. Ostroushko, et al.*, Case No. 26-cr-00086 (NEB/JFD), Dkt. 48 at 1 (Sept. 14, 2026). Final judgment in the criminal case could therefore be many months away, if

not longer. And Defendants' Motion contains no details regarding any concrete risk of disruption or subversion of the criminal case that the civil case might cause. The public interest factor therefore tips in favor of proceeding.

* * * *

The *Keating* factors tip strongly in Hernandez's favor. Defendants' voluntary testimony in the restraining order case obliterated whatever interest they would have had in a stay, and Hernandez has a particularly strong interest in proceeding with the case given the importance of third parties' recollections and documentary evidence.

### D. If the Court Issues a Stay, It Should Be Limited and Narrowly Tailored.

Hernandez respectfully urges the Court to deny a stay of any kind. But if the Court is inclined to issue a stay, the stay should be limited and narrowly tailored to address Defendants' Fifth Amendment concerns. Specifically, the Court should stay Defendants' obligation to respond to the Complaint; Hernandez's ability to propound written discovery on Defendants; and Hernandez's ability to depose Defendants. Under such a stay, Hernandez could still conduct third-party discovery, including document subpoenas and deposition subpoenas.

Defendants' argument in favor of a stay is that proceeding with the case "imposes the Hobson's choice of deciding whether to invoke or forego the Fifth Amendment right against self-incrimination in the civil case." Dkt. 23 at 6. Even if the Court agrees, Defendants' argument applies only to testimony, not to participation in the case as a general matter. Defendants have no Fifth Amendment privilege that would attach to subpoena to

third parties. *See Fisher v. United States*, 425 U.S. 391, 397 (1976) ("The taxpayers' Fifth Amendment privilege is . . . not violated by enforcement of the summonses directed toward their attorneys.")

Third-party discovery is particularly important in this case. In addition to the parties' testimony about what took place at the Whipple Federal Building, some of the most important evidence will be eyewitness testimony and video evidence. While Hernandez has her own video footage of the Incident, other individuals, including Andrew Mercado, Chad Michael, Darnell Edwards, Oskar Quentin, and Rob Potylo, are also believed to have recorded the Incident, or portions of it. Franklin-Murdock Decl. ¶ 11. Many other individuals witnessed the Incident, which took place at a protest. Hernandez therefore needs to take third-party discovery to (1) obtain full, unedited video footage of the Incident from as many angles as possible; (2) authenticate the video footage of the Incident that various third parties have already uploaded to social media; and (3) depose eyewitnesses regarding their recollection of events. *Id.* ¶ 12. If Hernandez is forced to wait until the criminal case resolves before taking any of this discovery, she may face prejudice as (1) third parties could delete their video footage; (2) witnesses could become incapacitated, be sent to prison,[2] or otherwise move outside of this Court's jurisdiction; and (3)

[2] Hernandez is presently aware of at least two important witnesses to the Incident who are under indictment in *United States v. Levy Armstrong, et al.*, Case No. 26-cr-00025-LMP-DLM (D. Minn.), colloquially known as the Cities Church Case. Both witnesses—Ian Davis Austin and William Scott Kelly—were eyewitnesses who interacted with Hernandez in immediate proximity to the Incident and discussed the Incident on social media. Franklin-Murdock Decl. ¶ 13.

eyewitnesses' memory could fade or otherwise become less reliable. A full stay would thus prejudice Hernandez without providing any constitutional protections to Defendants.

Courts in other jurisdictions have issued partial stays like the one Hernandez seeks in the alternative. *See, e.g.*, *White v. Feaman*, Case No. 4:18-CV-00518-NCC, 2018 WL 5831261, at *2 (E.D. Mo. Nov. 7, 2018) (concluding that a "complete stay . . . is not warranted at this time" and issuing a "partial stay . . . so that some discovery may proceed"); *Green v. Cosby*, 177 F. Supp. 3d 673, 681 (D. Mass. 2016) ("A complete stay of this litigation, however, is not warranted. It simply is not necessary in order to avoid the Fifth Amendment predicament. Rather, all that is necessary is that Defendant be exempted from providing discovery while his criminal case is pending."); *Comer v. Shrum*, No. 4:18-CV-00058, 2019 WL 7288153, at *5 (E.D. Tenn. Sept. 27, 2019) ("Staying discovery as to Holmes alone would still leave numerous Defendants from whom Plaintiffs could take discovery and move the litigation forward while waiting for the resolution of criminal proceedings against Holmes. Plaintiffs could also take discovery from nonparties while a stay as to Holmes is in effect.").

## IV. CONCLUSION

The Court should deny Defendants' motion to stay given Defendants' voluntary testimony about their attack on Hernandez in unsuccessful restraining order petitions they filed against her. In the alternative, the Court should impose only a partial stay that would not impair Hernandez's ability to take third-party discovery during the pendency of the criminal proceedings against Defendants.

Dated: September 28, 2026

Respectfully submitted,

**MOHRMAN, KAARDAL & ERICKSON, P.A.**
**LOCAL COUNSEL**

Erick G. Kaardal, MN. No. 229647
Elizabeth A. Nielsen, MN. No. 0403696
**MOHRMAN, KAARDAL & ERICKSON, P.A.**
150 South 5th Street, Suite 3100
Minneapolis, MN 55402
Telephone: (612) 341-1074
Email: kaardal@mklaw.com
Email: nielsen@mklaw.com

**SWEIGART MURDOCK, LLP**

*/s/ Jesse D. Franklin-Murdock*
Jesse D. Franklin-Murdock*
California Bar No. 339034
Karin M. Sweigart*
California Bar No. 247462
**SWEIGART MURDOCK, LLP**
1160 Battery Street, Suite 100
San Francisco, California 94111
Telephone: (415) 873-0123
Facsimile: (873) 890-0791
Email: Jesse@sm-llp.com
Email: Karin.Sweigart@sm-llp.com

*Attorneys for Plaintiff Savanah Hernandez*

*admitted *pro hac vice*